### IN THE UNITED STATES DISTRICT COURT FOR THE
### EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD J. HRAPCZYNSKI, JR., | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 20-cv-06014 |
| | : | |
| BRISTLECONE, INC., | : | |
| Defendant. | : | |

**July 29 , 2021**                                    **Anita B. Brody, J.**

## <u>MEMORANDUM</u>

Plaintiff Richard J. Hrapczynski, Jr. brings this action against Defendant Bristlecone, Inc. ("Bristlecone") for violating the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §621 *et seq*.; the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101 *et seq*.; Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e *et seq;* 42 U.S.C. §1981 ("Section 1981"); and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. Ann. §951 *et seq*. I exercise federal question jurisdiction over Hrapczynski's ADEA, ADA, Title VII, and § 1981 claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over Hrapczynski's PHRA claim pursuant to 28 U.S.C. § 1367. Bristlecone moves to compel arbitration and to dismiss Hrapczynski's Complaint. I will grant Bristlecone's motion.

## I. BACKGROUND[1]

Plaintiff Hrapczynski is a sixty-six-year-old, white man of American origin who lives in Pennsylvania. Defendant Bristlecone is a corporation located in California. In a letter dated August 9, 2012, Bristlecone offered to employ Hrapczynski as a Project Manager (the

---

[1] All of the facts are taken from Hrapczynski's Complaint unless otherwise noted.

"Employment Agreement"). Abhyankar Decl. Ex. A.  The entire two-page Employment

Agreement was written in a standard-size, readable font. *Id.*

In the Employment Agreement, Bristlecone offered Hrapczynski a base salary of

$150,000 per year and an annual discretionary incentive of $30,000. *Id.* ¶ 1  The Employment

Agreement also included an arbitration provision:

> **Arbitration.**  Any controversy between the parties hereto involving the
> construction of application of any terms, covenants or conditions of this Agreement,
> or any claims arising out of or relating to this Agreement or the breach thereof or
> with your employment with the company or any termination of that employment,
> will be submitted to and settled by final and binding arbitration in Palo Alto,
> California, In accordance with the Model Employment Dispute Resolution Rules
> of the American Arbitration Association (the "Rules") then in effect. Any arbitrator
> shall be selected pursuant to such Rules and judgment upon the award rendered by
> the arbitrators may be entered in any court having jurisdiction thereof.

*Id.*  ¶ 4.  Additionally, the Employment Agreement provided Hrapczynski with instructions for

accepting the offer.  To accept the offer, Hrapczynski had to sign the agreement and "return it to

the Company by no later than end of business on August 10th, 2012."  *Id.* at 1.  The letter further

reiterated that the offer of employment was "valid through Friday, August 10th, 2012."  *Id.* ¶ 6.

On August 20, 2012, Hrapczynski signed the Employment Agreement.  *Id.* at 2.  That

same day, Hrapczynski began working for Bristlecone as a Program Delivery Manager.

Hrapczynski is a "highly accomplished executive management professional with decades of

experience in building, directing, and leading the implementation of SAP solutions."[2]  Compl. at

1.  While at Bristlecone, Hrapczynski "provided executive oversight over the implementation of

enterprise-wide SAP solutions, serving as liaison between team members, clients, and client

leadership."  *Id.* ¶ 23.

---

[2] Plaintiff never states in the Complaint what the abbreviation SAP stands for.

For nearly seven years, Hrapczynski worked for Bristlecone primarily from his home in Pennsylvania.  Until mid-2018, Hrapczynski "received overwhelmingly positive performance appraisals, merit-based compensation increases and bonuses, and multiple awards recognizing his contributions to Defendant's organization."  Compl. ¶ 38.  In August 2018, Hrapczynski began reporting to a new supervisor, Ganesh Subramanian, who treated Hrapczynski "differently, and worse, then he treated younger, non-disabled, non-American, and non-white direct employees."  *Id.*  ¶ 44.  Subramanian routinely made jokes about Hrapczynski's age and refused on multiple occasions to provide reasonable accommodations for Hrapczynski's disability—cataracts.

On January 29, 2019, Hrapczynski's doctor diagnosed Hrapczynski with anxiety and situational stress, stemming from his work environment. On February 5, 2019, based on his doctor's recommendation, Hrapczynski took a medical leave of absence for the next several months. On June 20, 2019, Hrapczynski resigned from Bristlecone because "he could no longer work at [Bristlecone] due to the discrimination he endured." *Id.* ¶ 76.

## II.  LEGAL STANDARD

In deciding a motion to compel arbitration, a district court may either employ the motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) or the motion for summary judgment standard under Federal Rule of Civil Procedure 56. *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 771-76 (3d Cir. 2013). The Third Circuit provides the following guidance on when each standard is appropriate to apply:

> [W]hen it is apparent, based on "the face of a complaint, and documents relied upon in the complaint," that certain of a party's claims "are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts

3

sufficient to place the agreement to arbitrate in issue, then "the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question."

*Id.* at 776 (quoting *Somerset Consulting, LLC v. United Cap. Lenders, LLC*, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011)). "Indeed, any time the court must make a finding to determine arbitrability, pre-arbitration discovery may be warranted." *Id.* at 774 n.5.

Bristlecone brings its motion to compel arbitration and to dismiss the Complaint under Rule 12(b)(6). It relies solely on the Complaint and an arbitration provision contained in the parties' Employment Agreement to argue that arbitration is required.

In deciding a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). Although a district court ruling on a 12(b)(6) motion to dismiss generally cannot review issues or materials extraneous to the pleadings, "'a document *integral to or explicitly relied* upon in the complaint' may be considered." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)). Thus, a court may look at "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

Hrapczynski did not attach the Employment Agreement to the Complaint but neither party argues that it should be excluded from consideration at the motion to dismiss stage. Because the Employment Agreement is integral to Hrapczynski's claims, and the parties do not

dispute the authenticity of the document, it is proper to consider it under Rule 12(b)(6). *See Curtis v. Cintas Corp.*, 229 F. Supp. 3d 312, 315 (E.D. Pa. 2017) (considering employment agreement in deciding whether to grant a motion to compel arbitration under Rule 12(b)(6)). Moreover, "[i]t would frustrate the purposes of the Federal Arbitration Act if plaintiffs could avoid having their claims quickly compelled to arbitration simply by failing to mention the existence of clearly applicable arbitration agreements in their complaints." *Hewitt v. Rose Grp.*, No. 15-5992, 2016 WL 2893350, at *2 n.1 (E.D. Pa. Mar. 21, 2016). Because Bristlecone relies solely on the Complaint and the arbitration provision contained in the parties' Employment Agreement, the Rule 12(b)(6) standard applies to Bristlecone's motion to compel arbitration.[3]

## III. DISCUSSION

Bristlecone moves to compel arbitration on the basis that the Employment Agreement contains a valid and enforceable arbitration provision. Hrapczynski opposes arbitration and asserts that the motion to compel should be denied under Rule 12(b)(6). He argues that the arbitration provision is invalid because the Employment Agreement itself is not a valid contract. Alternatively, Hrapczynski contends that the arbitration provision cannot be enforced because it is unconscionable.

"The Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* ('FAA'), creates a body of federal substantive law establishing and governing the duty to honor agreements to arbitrate disputes." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 522 (3d Cir. 2009). "Congress designed the FAA to overrule the judiciary's longstanding reluctance to

---

[3] Hrapczynski contends that the motion to compel should be denied under Rule 12(b)(6). In the alternative, Hrapczynski contends that the Court should order discovery to determine whether there is a valid agreement to arbitrate. Hrapczynski, however, does not identify the discovery that he wants to conduct or why it is necessary. Hrapczynski is not entitled to discovery because it is plain from the Complaint and the Employment Agreement that the Court must compel arbitration.

enforce agreements to arbitrate and its refusal to put such agreements on the same footing as other contracts, and the FAA expressed a strong federal policy in favor of resolving disputes through arbitration." *Id.* (citations omitted).

However, "the strong federal policy favoring arbitration . . . does not lead automatically to the submission of a dispute to arbitration upon the demand of a party to the dispute." *Id.* at 523. "[W]hether parties have agreed to 'submi[t] a particular dispute to arbitration' is typically an 'issue for judicial determination.'" *Granite Rock Co. v. Int'l Bhd. of Teamsters, et al.*, 561 U.S. 287, 296 (2010) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)). Before compelling arbitration, "a court must consider two 'gateway' questions: (1) 'whether the parties have a valid arbitration agreement at all' (i.e., its enforceability), and (2) 'whether a concededly binding arbitration clause applies to a certain type of controversy' (i.e., its scope)." *In re Remicade (Direct Purchaser) Antitrust Litig.*, 938 F.3d 515, 519 (3d Cir. 2019) (quoting *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1416-17 (2019)).

Here, the parties dispute the first gateway question—the existence of a valid arbitration agreement. "It is well established that the Federal Arbitration Act (FAA), reflects a 'strong federal policy in favor of the resolution of disputes through arbitration.'" *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (quoting *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir.2003)). However, "this presumption in favor of arbitration 'does not apply to the determination of whether there is a valid agreement to arbitrate between the parties.'" *Id.* (quoting *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002)). To determine if there is a valid arbitration agreement, a court must "apply ordinary state-law principles that govern the formation of contracts." *James v. Glob. TelLink Corp,* 852 F.3d

262, 265 (3d Cir. 2017) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

Although Hrapczynski lived and worked in Pennsylvania during his employment with Bristlecone, a choice of law analysis is necessary to determine whether Pennsylvania or California law applies because Bristlecone is located in California. For a diversity jurisdiction case, a court must apply the choice of law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941). Here, that state is Pennsylvania.

Pennsylvania's choice of law analysis has three steps. First, a court decides if there is an "*actual* or real conflict between the potentially applicable laws." *Hammersmith v. TIG Ins. Co.,* 480 F.3d 220, 230 (3d Cir. 2007). If there is no conflict and the law in both jurisdictions is the same, then there is no need to proceed with a choice of law analysis. *Id.* Second, if there is a conflict in the law, then a "court should examine the governmental policies underlying each law, and classify the conflict as a 'true,' 'false,' or an 'unprovided-for' situation." *Id.* Third, "[i]f a true conflict exists, the Court must then determine which state has the 'greater interest in the application of its law.'" *Id.* at 231 (quoting *Cipolla v. Shaposka*, 267 A.2d 854, 856 (Pa. 1970)).

The parties concede that there is no "actual" conflict between the laws of California and Pennsylvania regarding contract formation. As Bristlecone states, "whether Pennsylvania or California law applies, *the result is the same*." Def.'s Mot. Compel at 5 (emphasis added). Hrapczynski also recognizes, "there is no conflict between Pennsylvania and California law on the issue of contract formation – the analyses proceed identically." Pl.'s Sur-reply at 6. Thus, it is unnecessary to do any further choice of law analysis. The Court will rely exclusively on Pennsylvania law because both parties agree that there is no actual conflict between Pennsylvania and California law. *See Aliments Krispy Kernels, Inc. v. Nichols Farms,* 851 F.3d

283, 289 (3d Cir. 2017) ("Both parties . . . agree that there is no actual conflict between New York law and New Jersey law. Consequently, we will apply New Jersey law on contract formation." (footnote omitted)).  Accordingly, the Court will apply Pennsylvania law to determine whether the Employment Agreement—including the agreement to arbitrate—is a valid contract, and whether the arbitration provision within the contract is unconscionable.

## 1. The Arbitration Agreement is Valid

Hrapczynski argues that the arbitration provision is not valid because he never entered into the Employment Agreement with Bristlecone. Specifically, Hrapczynski contends that the Employment Agreement is not a valid contract because he did not sign the Employment Agreement until August 20, 2012—ten days after the August 10, 2012 deadline to accept Bristlecone's offer of employment. Bristlecone argues that the Employment Agreement and the arbitration agreement within the contract are valid because Hrapczynski accepted the terms and conditions of the Employment Agreement by signing the agreement and working for Bristlecone for nearly seven years.

"It is black letter law that in order to form an enforceable contract, there must be an offer, acceptance, consideration or mutual meeting of the minds." *Jenkins v. Cty. of Schuylkill*, 658 A.2d 380, 383 (Pa. Super. Ct. 1995); *see also Schreiber v. Olan Mills*, 627 A.2d 806, 808 (Pa. Super. Ct. 1993) ("The elemental aspects necessary to give rise to an enforceable contract are 'offer', 'acceptance', 'consideration' or 'mutual meeting of the minds.'").  Hrapczynski contends that he did not accept Bristlecone's offer because he signed the Employment Agreement after the deadline for acceptance.  Thus, he asserts the Employment Agreement is not a valid contract.

It is well established that an offeree's power of acceptance terminates at the deadline specified in the offer.  Restatement (Second) of Contracts § 41(1) (1981); 1 Richard A. Lord,

8

Williston on Contracts § 5:5 (4th ed. 2021). That does not end the inquiry, however, because an acceptance after the deadline specified in the original offer is considered a new offer that can be accepted by the original offeror. *Berg Co. v. Thomas & Son Co.*, 100 A. 951, 951-52 (Pa. 1917) (affirming lower court's holding that a seller's late acceptance of a buyer's offer to sell an additional 250 tons of acid phosphate was actually a new offer because the deadline to accept the original offer had expired); Restatement (Second) of Contracts § 70 (1981) ("A late or otherwise defective acceptance may be effective as an offer to the original offeror . . . ."). "Substantial authority exists for the proposition that a late acceptance, in reality, constitutes a counteroffer that must in turn be accepted to form a contract." *Childs v. Adams*, 909 S.W.2d 641, 645 (Ark. 1995); *see, e.g., Houston Dairy, Inc. v. John Hancock Mut. Life Ins. Co.*, 643 F.2d 1185, 1186 (5th Cir. 1981); *Morrison v. Rayen Invs., Inc.*, 624 P.2d 11, 12 (Nev. 1981); *DePack v. United States*, No. 07-1620, 2008 WL 324105, at *4 (D.N.J. Feb. 5, 2008).

Therefore, Hrapczynski's late acceptance of the Employment Agreement constituted a counteroffer to Bristlecone. If Bristlecone accepted Hrapczynski's counteroffer, then the Employment Agreement, and the arbitration agreement within it, are valid.

In Pennsylvania, acceptance of a contract "may be manifested by conduct as well as by words." *Selig v. Philadelphia Title Ins. Co.*, 111 A.2d 147, 151 (Pa. 1955) (citing *Gum, Inc., v. Felton*, 17 A.2d 386 (Pa. 1941)).  It is "well established that 'an offer may be accepted by conduct and what the parties do pursuant to the offer is germane to show whether the offer is accepted.'"  *Refuse Mgmt. Sys., Inc. v. Consol. Recycling & Transfer Sys., Inc.*, 416, 671 A.2d 1140, 1146 (Pa. Super. Ct. 1996) (quoting *Accu–Weather, Inc. v. Thomas Broadcasting Co.*, 625 A.2d 75, 78 (Pa. Super Ct. 1993). "Whether particular conduct expresses an offer and acceptance must be determined on the basis of what a reasonable person in the position of the parties would

be led to understand by such conduct under all of the surrounding circumstances." *Temple Univ. Hosp., Inc. v. Healthcare Mgmt. Alternatives, Inc.*, 764 A.2d 587, 593 (Pa. Super Ct. 2000) (quoting John Edward Murray, Jr., Murray on Contracts § 37, at 82 (3rd ed.1990)).

Because Hrapczynski did not sign the letter until August 20, 2012—ten days after the deadline to accept Bristlecone's offer—his response to the Employment Agreement constituted a counteroffer. When Bristlecone received the counteroffer, it did not object to Hrapczynski's late return of the Employment Agreement.  Instead, Bristlecone hired Hrapczynski to begin work that same day.  For almost seven years, Hrapczynski continued to work for Bristlecone as a Program Delivery Manager.  Bristlecone's hiring of Hrapczynski constituted acceptance of Hrapczynski's counteroffer.  The ongoing employment relationship between Bristlecone and Hrapczynski demonstrates that both parties understood Bristlecone's conduct to be an acceptance of the counteroffer.  Because Bristlecone accepted Hrapczynski's counteroffer, the Employment Agreement is a valid contract.  Accordingly, the arbitration agreement within the contract is also valid.

## 2. The Arbitration Agreement is not Unconscionable

Hrapczynski argues that the arbitration agreement is unenforceable because it is unconscionable under Pennsylvania law. Bristlecone counters that there is nothing unconscionable about the arbitration agreement.

Unconscionability is a "contractual remedy which serves to relieve a party from an unfair contract or from an unfair portion of a contract." *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 181 (3d Cir. 1999) (quoting *Germantown Mfg. Co. v. Rawlinson*, 491 A.2d 138, 145 (Pa. Super. Ct. 1985). "To prove unconscionability under Pennsylvania law, a party must show that the contract is *both* substantively and procedurally unconscionable." *Quillion v. Tenet HealthSystem*

*Phila., Inc*., 673 F.3d 221, 230 (3d Cir. 2012) (emphasis added). A contract is considered procedurally unconscionable when "there was a lack of meaningful choice in the acceptance of the challenged provision." *Salley v. Option One Mortg. Corp.*, 925 A.2d 115, 119 (2007). A contract is substantively unconscionable when it contains "contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent." *Quillon,* 673 F.3d at 230 (quoting *Harris*, 183 F.3d at 181). The burden of proof for unconscionability rests on the party challenging the arbitration agreement. *Salley,* 925 A.2d. at 119-20. If there is a high degree of procedural unconscionability, then "a lesser degree of substantive unconscionability may be required." *Quillon*, 673 F.3d at 230 (quoting *Salley*, 925 A.2d at 125 n.12). Regardless, a party challenging a contract as unconscionable must prove both prongs—procedural and substantive unconscionability—to succeed. *Id.*

The arbitration provision in this case is not procedurally unconscionable. Hrapczynski contends that the contract is procedurally unconscionable because it is a contract of adhesion. Contracts of adhesion, such as standard form contracts signed by a party or consumer in a weaker bargaining position, are "generally considered to be procedurally unconscionable." *Quillon,* 673 F.3d at 235. However, a contract "cannot be deemed unconscionable 'simply because of a disparity in bargaining power.'" *Id.* (quoting *Witmer v. Exxon Corp.*, 434 A.2d 1222, 1228 (Pa. 1981)). "Parties frequently possess varying degrees of bargaining power, and there is a 'range of ordinary and acceptable bargaining situations.' Our role is to distinguish acceptable bargaining situations from those which violate 'strong public policy.'" *Id.* (quoting *Salley*, 925 A.2d at 120 n.3). "Factors courts must consider in determining whether [a] contract rises to the level of procedural unconscionability include: 'the take-it-or-leave-it nature of the

11

standardized form of the document,' 'the parties' relative bargaining positions,' and 'the degree

of economic compulsion motivating the adhering party.'" *Id.* (quoting *Salley*, 925 A.2d at 125).

Depending on the particular bargaining situation of the parties, the Third Circuit has

rejected or accepted a plaintiff's claim that a form employment agreement is procedurally

unconscionable. In *Zimmer v. CooperNeff Advisors, Inc.*, the Third Circuit rejected the plaintiff's

argument that the form employment agreement he entered into with his employer was

procedurally unconscionable. 523 F.3d 224, 228-30 (3d Cir. 2008). The plaintiff was a highly

educated economist with several other employment opportunities, and further, he did not allege

that he lacked an opportunity to negotiate the contract. *Id.* at 229 Under these circumstances, the

Court held that the arbitration clause was not procedurally unconscionable because the plaintiff

"did not lack a meaningful choice in accepting the challenged arbitration provision." *Id.*

Similarly, in *Great Western Mortgage Corporation v. Peacock*, the Third Circuit "found that the

agreement was not procedurally unconscionable because Peacock agreed to arbitration on three

different occasions, she was a college graduate with a Business Administration degree, and she

did not contend that she failed to read the document containing the arbitration agreement, or that

she was coerced into signing it." *Quilloin*, 673 F.3d at 236 (citing *Great W. Mortg. Corp. v.*

*Peacock*, 110 F.3d 222, 228-30 (3d Cir. 1997)). Additionally, in *Quilloin*, the Third Circuit

rejected the plaintiff's procedural unconscionability argument because even though the plaintiff

"did not possess the same level of education or specialized skill as the plaintiff in *Zimmer*," *id.* at

236, she "did not lack a meaningful choice" in accepting the employment agreement as she had a

college degree and had agreed to arbitration on more than one occasion,  *id.* at 237.

By contrast, the Third Circuit held in *Alexander v. Anthony International, L.P.* that the

arbitration agreement was procedurally unconscionable because it was "between a multi-national

business and minimally-educated crane operators." *Quilloin,* 673 F.3d at 236 (citing *Alexander v. Anthony Int'l, L.P.,* 341 F.3d 256, 266 (3d Cir. 2003)).   In *Nino v. Jewelry Exchange, Inc.*, the Third Circuit also found procedural unconscionability "in an employment agreement where the employee, though college educated, . . . was dependent on the employer, one of the world's largest jewelry retailers, for his immigration status." *Id.* (quoting *Nino v. Jewelry Exch., Inc.*, 609 F.3d 191, 196-7, 202 (3d Cir. 2010)).[4]

Here, Hrapczynski asserts that the Employment Agreement is a procedurally unconscionable solely because it is a contract of adhesion. Hrapczynski's situation, however, is nothing like that of the plaintiffs in *Nino* or *Alexander* who were at an extreme disadvantage in bargaining power.  Hrapczynski is a "highly accomplished executive management professional with decades of experience in building, directing, and leading the implementation of SAP solutions."  Compl. at 1, who was hired at Bristlecone to "provide[] executive oversight over the implementation of enterprise-wide SAP solutions,"  *id.* ¶ 23.  At hiring, Hrapczynski possessed specialized skills that he was highly compensated for with a $150,000 salary, plus the opportunity to earn an annual discretionary bonus of $30,000.

Hrapczynski does not claim that he failed to read the two-page Employment Agreement or failed to see the arbitration provision clearly printed in standard-size font on the first page of the contract. Nor does Hrapczynski argue that he was coerced into signing the Employment Agreement.  Moreover, Hrapczynski does not argue that he tried and was denied the opportunity to negotiate the contract. Hrapczynski did not lack a meaningful choice in accepting the

---

[4] "Although *Great Western Mortgage Corp. v. Peacock*, *Nino v. Jewelry Exchange, Inc.*, and *Alexander v. Anthony Intern., L.P.*, apply New Jersey and Virgin Islands law, the cases provide useful reference points because the principles of procedural unconscionability are substantially similar under the laws of those jurisdictions." *Quilloin*, 673 F.3d at 236 n.6 (examining the listed cases to determine whether a contract was procedurally unconscionable under Pennsylvania law).

Employment Agreement.  Therefore, the arbitration provision is not procedurally unconscionable. Hrapczynski cannot succeed on his argument that the arbitration agreement is unenforceable because it is unconscionable.[5]

## IV.  CONCLUSION

I will grant Bristlecone's motion to compel arbitration and to dismiss the Complaint because the arbitration agreement is valid and enforceable.[6]

　s/ANITA B. BRODY, J.＿＿＿
Anita B. Brody, J.

---

[5] "To prove unconscionability under Pennsylvania law, a party must show that the contract was both substantively and procedurally unconscionable." *Quilloin*, 673 F.3d at 230. Because the arbitration agreement is not procedurally unconscionable, it is unnecessary to determine whether the forum provision or other features of the arbitration provision are substantively unconscionable. *See Zimmer*, 523 F.3d at 230 ("Because we have concluded that the arbitration agreement here was not procedurally unconscionable and reverse on that basis, we need not decide whether the District Court's decision as to substantive unconscionability was correct.")

[6] The Federal Arbitration Act "affords a district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration." *Lloyd v. HOVENSA, LLC.*, 369 F.3d 263, 269 (3d Cir. 2004).  Because neither of the parties request a stay, I will dismiss the action.  *See Hutt v. Xpressbet, LLC*, No. 20-494, 2020 WL 2793920, at *7 (E.D. Pa. May 29, 2020) (granting motion to compel arbitration and dismissing action because no party requested a stay); *Magee v. Francesca's Holding Corp.*, No. 17-565, 2020 WL 3169518, at *11 (D.N.J. June 15, 2020) (same); *Jones v. Judge Tech. Servs. Inc.*, No. 11-6910, 2014 WL 3887733, at *8 n.5 (E.D. Pa. Aug. 7, 2014) (same).